Rockingham,
No. 5840.

### MARY K. MADSEN *v.* HARRY V. MADSEN.

Argued November 7, 1968.
Decided June 30, 1969.

*Perkins, Holland & Donovan* and *William H. M. Beckett* (*Mr. Beckett* orally), for the plaintiff.

*Scammon, Gage & Whitman* (*Mr. Robert G. Whitman* orally), for the defendant.

KENISON, C. J. Plaintiff's motion to renew and extend alimony payments in the amount of $300 monthly (RSA 458:19) for an additional period of three years from July 8, 1967 was granted after hearing before a judicial referee (RSA 493-A:1). The report of the judicial referee (*Amos N. Blandin, Jr.*) was approved by the Superior Court (*Loughlin,* J.) who reserved and transferred the defendant's exceptions thereto.

The parties were divorced in 1961. The original decree incorporated a stipulation of the parties which provided for the payment of $350 a month subject to additional sums dependent on increases in the defendant's salary. The stipulation in addition provided that "any subsequent increased financial obligations of said Harry V. Madsen which may arise from any subsequent marriage or children born of said marriage shall not be considered as a factor to reduce this minimum amount [of support]". The plaintiff sought renewal of the support decree in 1965 pursuant to RSA 458:19 which was granted in the reduced amount of $300 a month. This proceeding sought a second renewal which was granted.

The defendant is a jet pilot for an airline with whom he has been employed for more than seventeen years at a salary of approximately $27,000. He has remarried and has two children. The equity in his home in Virginia is estimated at five to six thousand dollars and he has a "little equity" in a farm of sixty acres which was acquired at a cost of $10,000. The plaintiff has not remarried. She earns in excess of $6,600 a year as special ticket representative for an airline. She owns a 1959 Rambler automobile, and lives in a one-bedroom apartment. Her standard of living is below that established during her marriage and her expenses prior to the hearing exceeded her net earnings by approximately $2,600. She has a savings account of $2,500 and securities valued at approximately $34,-000 purchased in part from the proceeds of sale of a house from her father's estate. The Court found that her retirement years are not provided for although she has social security and some protection from a company-sponsored retirement plan which she recently joined.

The standards of judicial review of an alimony decree which is to be modified, extended or renewed were set forth in *Douglas* v. *Douglas,* 109 N. H. 41, 42-43: "First, any modification order is always subject to review. *Taylor* v. *Taylor,* 108 N. H. 193;

*Kennard* v. *Kennard,* 81 N. H. 509, 511. Secondly, any modification order will be set aside only if it clearly appears on the evidence that there has been an abuse of judicial discretion. *Fortuna* v. *Fortuna,* 103 N. H. 547, 548; *Collette* v. *Collette,* 108 N. H. 469. Thirdly, the modification order is to be measured in terms of the needs of the parties and their respective abilities to meet them. *Payette* v. *Payette,* 85 N. H. 297; *Fortuna* v. *Fortuna, supra*; Annot. 18 A.L.R. 2d 10, 13. Fourthly, the Trial Court, of necessity, is accorded a wide discretion in determining the amount of payments and the conditions thereof. *Benjamin* v. *Benjamin,* 99 N. H. 117, 119; *Guggenheimer* v. *Guggenheimer,* 99 N. H. 399, 403."

The plaintiff requested the Court to find and rule that the original stipulation signed by the parties and approved by the Court in 1961 was binding on the Court in this proceeding. This request was denied and correctly so. The stipulation was not binding and conclusive in view of the specific provisions of RSA 458:19 but the stipulation was a factor which the Court may take into account in determining the terms of the modified decree. *Taylor* v. *Taylor,* 108 N. H. 193; *Madsen* v. *Madsen,* 106 N. H. 267, 269; *Collette* v. *Collette,* 108 N. H. 469.

The defendant contends the extension of the alimony payments for another three-year period is unreasonable for several reasons. Emphasis is placed on the fact that the plaintiff on her vacation took an around-the-world tour. On its face and unexplained this may be thought to be a flyer toward the opulent life. However the plaintiff was a special ticket representative of an airline and the trip could be accomplished at a cost of $896, much less than the average mortal would have had to spend. She made a gift of $8,000 to her cousin which on its face might be considered an example of affluent generosity. However this, as well as her vacation, were financed with the proceeds of the sale of her father's home. The cousin had taken care of her ". . . father who had been quite ill for many, many years." The cousin made no claim against the estate for services and the plaintiff could have concluded that this so-called gift was just compensation for services rendered.

The plaintiff submitted a meticulous statement of her total income and expenses and explained the reason for them in detail. The Court below concluded that she had sustained her burden of proof that the alimony payments should be renewed for

another three-year period. While a substantial increase in the wife's property by inheritance may justify a reduction or revocation of alimony payments (Annot. 18 A.L.R. 2d 10, 74-76), the extension of the payments for a three-year period is supported by the record in this case. Clark, Domestic Relations, s. 14.9, *p.* 460 (1968). The plaintiff demonstrated a need for continuation of alimony payments in the light of the original stipulation, the standard of living established during her marriage and the financial status of both plaintiff and defendant. 2A Nelson, Divorce and Annulment, *s.* 17.09 (2d *ed.* 1961). Of course any alimony payment by a husband supporting a new family is a burden, but the Court could conclude, as it did, that on the record before it, the order was neither financially unjust nor impossible of compliance.

*Exceptions overruled; remanded.*

All concurred.